IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON

LLOYD MARBET, EVELYNE MOYO, SUNNY
WALTERS, JAMIE BILLIG, DON JOUGHIN,
CORINNA ANDREWS, AND DON JOUGHIN
AS GUARDIAN AD LITEM OF MINOR
CHILDREN SJ, KA, AND D J-A,

                  Plaintiffs,                        CV 02-1448-HA

       v.

                                             OPINION and ORDER

CITY OF PORTLAND, CITY OF BEAVERTON,
VERA KATZ, MARK KROEKER, ROSIE SIZER,
GREG CLARK, MARTIN F. ROWLEY, BRAD
A. RITSCHARD, CORY R. ROBERTS, EDWARD T.
HAMANN, MARK W. KRUGER, DANE REISTER,
FRANK R. GORGONE, BRIAN P. KELLY, LARRY
GRAHAM, TODD R. ENGSTROM, TIMOTHY K.
ROBINSON, JOHN R. ANDERSON, TODD L.
WYATT, PETER B. SIMPSON, MICHAEL ROWE,
TIM LOWMAN, LAWRENCE E. BAIRD, CHRISTOPHER
J. LAFRENZ, AND JOHN DOE OFFICERS 1-10,

                  Defendants.

1 - OPINION and ORDER

Alan Stuart Graf
1020 S.W. Taylor Street, Suite 370
Portland, Oregon 97205
      Attorney for plaintiffs.

William W. Manlove
J. Scott Moede
Office of City Attorney
1221 S.W. Fourth Avenue, Room 430
Portland, Oregon 97204
      Attorneys for defendants City of Portland, Katz, Kroecker, Sizer, Clark, Rowley, Ritschard,
      Roberts, Hamann, Kruger, Reister, Gorgone, Kelly, Graham, Engstrom, Robinson,
      Anderson, Wyatt, Simpson, Baird, and Lafrenz.

Steven Kraemer
Hoffman, Hart & Wagner
1000 S.W. Broadway Avenue, Twentieth Floor
Portland, Oregon 97205
      Attorney for defendants City of Beaverton, Rowe, and Lowman.

HAGGERTY, Chief Judge:

Before the court are plaintiffs' Motions to Compel (Docs. #37, 88); defendants' Motion to

Limit Discovery and for Protective Order (Doc. #57); defendants' Rule 12 Motions (Docs. #25, 27);

and defendants' Motions to Bifurcate (Docs. #80, 84).

The court heard oral argument on these motions on August 4, 2003.  For the following

reasons, plaintiffs' Motions to Compel (Docs. #37, 88) are denied with leave to renew; defendants'

Motion to Limit Discovery and for Protective Order (Doc. #57) is granted in part and denied in part;

defendants' Rule 12 Motions (Docs. #25, 27) are granted in part and denied in part; and (4)

defendants' Motions to Bifurcate (Docs. #80, 84) are denied.

## BACKGROUND

On August 22, 2002, President Bush attended a fund-raising event at the Hilton Hotel in downtown Portland, Oregon. Plaintiffs were members of a large group of protesters present to protest the policies of the Bush Administration. The Portland Police Bureau had established a perimeter around the Hilton that ran less than one block in all directions. Defendants claim that the protesters were interfering with the ability of the fund-raiser attendees to enter the Hilton. Accordingly, defendants ordered plaintiffs and other protesters to move back approximately 120 feet. Defendants claim that they used a loudspeaker to order the crowd to move. After plaintiffs allegedly ignored several orders to move, defendants applied pepper spray on the crowd and moved the crowd with force. Later in the day, the police used additional tactics to subdue the crowd, including firing rubber bullets at members of the protest.

According to plaintiffs, the police exercised excessive force and quelled their constitutionally protected activities by assaulting the protesters without justification. Plaintiffs assert that it is defendants' custom, policy, and practice to use excessive force against lawful protesters; plaintiffs also claim that the municipal defendants maintain a policy of inadequately training and supervising police officers. Plaintiffs assert claims for violations of the First, Fourth, and Fourteenth Amendments through 42 U.S.C. § 1983, as well as various common law claims.

## STANDARDS

"Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party . . . ." Fed. R. Civ. P. 26(b)(1). The burden of establishing the need for a protective order falls on the party seeking the protective order. Fed. R. Civ. P. 26(c); *San*

*Jose Mercury News, Inc. v. United States Dist. Court*, 187 F.3d 1096, 1103 (9th Cir. 1999).

Defendants must justify the need for a protective order based on specific, articulable facts. *Valley*

*Broadcasting Co. v. United States Dist. Court,* 798 F.2d 1289, 1294 (9th Cir. 1986). "[A]ccess

is particularly appropriate when the subject matter of the litigation is of especial public interest . . . . "

*Welsh v. City and County of San Francisco*, 887 F. Supp. 1293, 1297 (N.D. Cal. 1995) (citing

*In re "Agent Orange" Prod. Liab. Litig.*, 821 F.2d 139, 146 (2nd Cir. 1987)).

Defendant moves to dismiss certain sections of the Amended Complaint for failure to state a

claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). When considering motions to

dismiss, the court must determine whether it appears beyond a doubt that plaintiffs can prove no set

of facts in support of their claims that would entitle them to relief. *See* Fed. R. Civ. P. 12(b)(6);

*Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1295-96 (9th Cir. 1998); *Johnson v. Knowles*,

113 F.3d 1114, 1117 (9th Cir. 1997); *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246 (9th Cir.

1997). The reviewing court must treat all facts alleged in the complaint as true, and all doubts are

resolved in favor of the nonmoving party. *Id.*; *NL Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th

Cir. 1986); *Experimental Eng'g Inc. v. United Technologies Corp.*, 614 F.2d 1244, 1245 (9th

Cir. 1980).

## DISCUSSION

### A. Limited Discovery

Defendants seek to limit plaintiffs' discovery requests. Parties are restricted to 25

interrogatories without leave of the court. Fed. R. Civ. P. 33(a). At this point in the litigation,

plaintiffs have served 146 requests for admissions, 106 requests for production, and 729 interrogatories on defendants.  Defendants have served 438 interrogatories, 344 requests for admission, and 124 requests for production.

At oral argument, plaintiffs stated that they have fully responded to defendants' discovery requests but that defendants have failed to provide the same candor in their responses to plaintiffs' requests.   Defendants did not challenge this assertion, except to contend that they had prepared a motion to compel, which was never filed with the court because the parties' resolved the dispute.

As an example of defendants' failure to comply with plaintiffs' requests, plaintiffs stated at oral argument that in the course of discovery defendants had produced only one e-mail authored by city officials.  Defendants did not challenge this assertion but claimed that the Mayor's office had composed only one e-mail about the events in question.  Perhaps realizing the fantastic nature of the assertion, defense counsel asked the court for leave to "take another look" to determine if all relevant e-mails had been produced rather than grant plaintiffs' request to allow a computer expert to analyze defendants' e-mail system.

The court finds that the interests of justice will be served by limiting future discovery. Accordingly, plaintiffs collectively are granted leave to serve on defendants no more than 50 requests for production, 50  interrogatories, and 50 requests for admission.  Based on defendants representations to the court at oral argument, defendants have no need to serve additional requests for production, interrogatories, or requests for admission.  Plaintiffs' additional discovery shall comport with the following schedule.

**• Plaintiffs' new discovery requests are to be served by September 29, 2003.**
**• Defendants' production, responses, and admissions are to be served by October 30, 2003.**
**• Plaintiffs' objections and motions to compel are to be filed with the court by November 14, 2003.**
**• Defendants' responses to motions to compel are due December 1, 2003.**
**• Plaintiffs' replies in support of motions to compel are due December 8, 2003.**

If the parties determine that additional discovery is needed, they shall file appropriate motions with the court showing cause for the need to obtain additional discovery. Plaintiffs' Motions to Compel are denied with leave to renew, and defendants' Motion to Limit Discovery is granted in part and denied in part.

**B. Protective Order**

As noted above, the party seeking a protective order bears the burden of establishing its need. Fed. R. Civ. P. 26(c); *San Jose Mercury News*, 187 F.3d at 1103. Broad allegations that a party will suffer generalized harm do not justify the entry of a protective order. *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 476 (9th Cir. 1992) (citing *Cipollone v. Liggett Group, Inc.*, 785 F.2d 1108, 1121 (3rd Cir. 1986)). Rather, defendants must articulate specific facts that establish the need for a protective order. *Valley Broadcasting Co.,* 798 F.2d at 1294.

Several aspects of the proposed protective order submitted by defendants are in error. First, defendants propose a far-reaching protective order that contains no restriction on what types of documents are subject to the protective order. The proposal merely states that the City of Portland "will produce for discovery and inspection *certain documents* in response to requests for production throughout the pendency of this litigation . . . ." Stipulated Protective Order at 1 (emphasis added).

The proposal contradicts itself on the issue of which members of the defense team will be authorized to view documents produced under the protective order.  Paragraph four of the proposal states: "All records subject to this Order will be produced on salmon colored paper.  These documents will be stamped "FOR ATTORNEY'S REVIEW ONLY****CONFIDENTIAL****PRODUCED UNDER PROTECTIVE ORDER."  Stipulated Protective Order ¶ 4.  The use of the term "*all* records" is unequivocal and indicates that *all* documents shall be marked "FOR ATTORNEY'S REVIEW ONLY."  By definition the term "ATTORNEY'S REVIEW ONLY" indicates that attorneys, and attorneys only, will review all documents produced under the protective order.  However, paragraph 1 of the proposal states that the "documents and information contained therein shall be disclosed *only to plaintiffs* and their counsel of record . . . ."  Stipulated Protective Order ¶ 1 (emphasis added).  Further, the proposal requires "[a]ny person to whom such documents or information contained therein is to be disclosed shall first be advised by counsel making the disclosure" that the documents shall be used only for this action.  Stipulated Protective Order ¶ 5.  Obviously a document that is stamped "FOR ATTORNEY'S REVIEW ONLY" should not be reviewed by clients.  However, the language of the proposal authorizes "plaintiffs and their counsel," as well as "any persons," to review documents produced under the protective order.  Thus, the proposal fails to distinguish between documents that are produced for the attorneys' review only and those that are produced for both the clients and attorneys to review.

Finally, the proposal is labeled "*Stipulated* Protective Order."  Stipulated Protective Order at 1 (emphasis added).  The use of the term "stipulated" is peculiar given that the parties concede that plaintiffs vigorously oppose the entry of any protective order.  "Stipulation: Voluntary agreement between opposing counsel concerning disposition of some relevant point so as to obviate need for proof or to narrow range of litigable issues."  Black's Law Dictionary 1415 (6th ed. 1990).  The fact that plaintiffs oppose the current motion and that the court must resolve the dispute indicates that the protective order is anything but stipulated.  The language used by defendants in their proposal is at best a poor choice of wording.

Defendants' memorandum in support of the "stipulated" protective order also contains core semantic failures.  Most troubling is defendants' lengthy discussion of the "official information privilege."  As discussed below, defendants contend that certain self-critical reviews of the events of August 22, 2002, are privileged.  However, defendants illogically contend that these "privileged" documents should fall under the "stipulated" protective order.  Defendants state, "The remainder of the material covered by City defendants' proposed Protective Order falls easily within the purview of the official information privilege or the other privileges asserted by the City defendants."  Defendants' Response to Plaintiffs' Motion to Compel Production and Motion for Sanctions at 10.  Defendants also contend that they "seek[] three things in [their] proposed Protective Order," one of which is "to not produce certain [privileged] documents."  Defendants' Response to Plaintiffs' Motion to Compel Protection and Motion for Sanctions at 7.

"Privilege: That which releases one from the performance of a duty or obligation . . . which he would otherwise be required to perform . . . ."  Black's Law Dictionary 1197 (6th ed. 1990).  The Federal Rules allow parties to "withold[] information otherwise discoverable under these rule by claiming that it is privileged . . . ."  Fed. R. Civ. P. 26(b)(5).  Therefore, if a document is privileged it would *not* be "covered by City defendants' proposed Protective Order . . . ."  The privileged documents would be entirely exempt from discovery because plaintiffs may discover only evidence that is "*not privileged*, that is relevant to the claim or defense of any party . . . ."  Fed. R. Civ. P. 26(b)(1) (emphasis added).

Defendants' proposed protective order is unacceptable to the court.  Therefore, the court must make the following evidentiary designations: (1) that which is discoverable without restriction, (2) that which must be produced pursuant to the protective order and reviewed only by the parties and their lawyers; (3) that which must be produced pursuant to the protective order and reviewed only by the attorneys of record (*i.e.* marked "ATTORNEYS' EYES ONLY"); and (4) that which is privileged, and is therefore exempt from discovery.

**1. Tactical Materials and Planning Information**

Defendants seek to redact tactical information and planning information related to less lethal munitions and pepper spray.  Defendants may redact the following information from their disclosures: (1) the effective range of the MK munition or pepper spray; (2) ways a person should dress in order to render the MK munition ineffective; (3) the total spray time of a can of pepper spray; (4) strategies two officers might use to move in coordination so that one officer can spray a vulnerable part of a

suspect's body; (5) the typical time required before pepper spray has its full effect; (6) how to

communicate a surprise spraying to other officers; (7) minimum distance for deployment that does not

risk back splash; (8) defensive measures officers can take when attacked with pepper spray; (9)

tactics for the successful movement and spraying patterns of officers using pepper spray; and (10)

tactical materials for the Mobile Field Force and Rapid Reaction Force that depict tactics, squad and

platoon formations, and officer rescue deployments, but not information regarding commands or

skirmish line deployments.  The remainder of the MK Ballistic Systems lesson plan, the Sage SL-6

lesson plan, the Portland Police Bureau Training Division Aerosol Restraint Certification Course

lesson plan, and all other information related to defendants' policy regarding the use of crowd control

techniques is discoverable and is not subject to the protective order.

     Regarding the Central Precinct Operations Order, defendants may redact only that

information specifically identified in paragraph 4 of the Benson affidavit, except the number of RRT

personnel.  Regarding the RRT Operations Order, defendants may redact only that information

specifically identified in paragraph 11 of the Benson affidavit, except the time line regarding the

anticipated schedule of RRT operations.  Regarding the Transit Police Operations Order, the Traffic

Division Operation Plan, the Southeast Precinct Operations Order, the SERT Operations Plan, and

the EDU Operations Plan, defendants may redact only that information specifically identified in

paragraphs 6-10 of the Benson affidavit.  Defendants may redact only that information specifically

identified in paragraph 12 of the Benson affidavit, except the location of the Presidential motorcade.

Defendants may redact nothing identified in paragraph 13 of the Benson affidavit, except the location

of particular members inside the Hilton.  All other planning and tactical information not specifically identified in the Benson affidavit that is responsive and relevant shall be produced under the protective order with the "ATTORNEYS' EYES ONLY" designation.

Regarding the redactions in the after action reports concerning tactical information identified in paragraph 3 of the Benson Affidavit, defendants shall submit the unredacted version of the reports to the court for *in camera* inspection within 21 days of this Order.  After such review, the court will determine whether the information shall be produced.

### 2. Intelligence Materials or Information

Defendants may redact any Criminal Intelligence Division (CID) information that would reveal the identity of informants or undercover officers.  Plaintiffs' counsel may depose the CID undercover officers under the protective order.  However, the identity of the officers must be redacted.  Only plaintiffs' counsel may attend the deposition.  Plaintiffs' counsel indicated at oral argument that the primary purpose of the depositions was to ask the CID officers if they heard the orders to disperse allegedly given by defendants.  Accordingly, plaintiffs and any representatives other than their counsel are not needed to assist in this inquiry and shall not attend the depositions.

Defendants may redact only that information specifically identified in paragraph 15 of the Kane affidavit.  All other relevant, responsive CID information shall be produced under the protective order and marked "ATTORNEYS' EYES ONLY."

### 3. After Action Reports

The parties dispute whether the official information privilege applies to certain self-critical reports produced by various governmental bodies analyzing the August 22, 2002, altercation. Federal claims heard in federal court are governed by the privileges defined by the federal common law.  Fed. R. Evid. 501; *Kerr v. United States Dist. Court*, 511 F.2d 192, 197 (9th Cir. 1975).  In this case, plaintiffs assert claims for violation of their federal constitutional rights, as well as state common law claims.  Privileges, as defined by the federal common law, govern the pendent state claims as well as the federal claims.  *Perrignon v. Bergen Brunswig Corp.,* 77 F.R.D. 455, 459 (N.D. Cal. 1978) ("[I]n federal question cases where pendent state claims are raised the federal

common law of privileges should govern all claims of privilege raised in the litigation.").  While

applying the federal common law rules of privilege, federal courts should consider the underlying

policies of various state privileges.  *Breed* v. *United States Dist. Court,* 542 F.2d 1114, 1115 (9th

Cir. 1976); *Kelly v. City of San Jose*, 114 F.R.D. 653 (N.D. Cal. 1987) ("As a matter of comity,

federal courts should attempt to ascertain what interests inspire relevant state doctrine and should

take into account the views of state authorities about the importance of those interests.").

     Defendants contend they have an interest in maintaining the secrecy of certain investigative

matters in order to encourage honest investigative practices in the future.  The "governmental" or

"official information privilege" is arguably the most applicable to these circumstances, which involve

allegations of the use of excessive force by police officers.  *Frankenhauser v. Rizzo*, 59 F.R.D. 339,

344 (E.D. Pa. 1973) (followed by *Mueller v. Walker*, 124 F.R.D. 654, 656 (D. Or. 1989)).

Among the factors for evaluating the claim of governmental privilege, the court should consider:

> (1) The extent to which disclosure will thwart governmental processes by
> discouraging citizens from giving the government information.
> (2) The impact upon persons who have given information of having their identities
> disclosed.
> (3) The degree to which government self-evaluation and consequent program
> improvement will be chilled by disclosure.
> (4) Whether the information sought is factual data or evaluative summary.
> (5) Whether the party seeking the discovery is an actual or potential defendant in any
> criminal proceeding either pending or reasonably likely to follow from the incident in
> question.
> (6) Whether the police investigation has been completed.
> (7) Whether any intradepartmental disciplinary proceedings have arisen or may arise
> from the investigation.
> (8) Whether the plaintiff's suit is non-frivolous and brought in good faith.
> (9) Whether the information sought is available through other discovery or from other
> sources.

(10) The importance of the information sought to the plaintiff's case.

*Kelly*, 114 F.R.D. at 663 (citing *Frankenhauser*, 59 F.R.D. at 344).

Defendants claim that after action reports authored by various city officials following the August 22, 2002, altercation are privileged. Defendants seek to redact sections of the after action reports and contend that "the vast majority of the redactions are limited to the evaluative sections of the report." Benson Affidavit ¶ 3. The other redacted sections address tactical information.

Considering the factors outlined above, the court determines that the after action reports are not privileged and should therefore be disclosed under the protective order. The court takes notice of the sound reasoning of another district court in this circuit in *Kelly v. City of San Jose*. 114 F.R.D. at 665. The facts of *Kelly* are fully applicable to the case at bar because *Kelly* involved allegations of excessive force by police officers and the government's attempt to withhold *ex post* investigative materials. Like the defendants here, the police officers in *Kelly* contended that disclosure of self-critical reports, even if limited by a protective order, would stifle honest assessments in the future. Rejecting the police officers' arguments, the court in *Kelly* found that there was no empirical evidence to support the contention that officers and witnesses would be less truthful or forthcoming if they knew their statements were subject to judicial review. In fact, the court opined that it was entirely possible that disclosure might actually increase honest discourse. "A police officer who knows that no one from outside the law enforcement community will scrutinize his statements or his investigatory work may not feel the same level of pressure to be honest and accurate as would his counterpart in a system where some disclosure was possible." *Id.* at 665.

The factors for applying the official information privilege counsel in favor of disclosure.  For example, the privacy concerns of citizens who have filed reports with the police will be protected by a narrowly drafted protective order that limits disclosure to the attorneys of record.  Citizens might be more likely to provide the government information if they knew that their complaints would be reviewed not only by city investigators but by the courts as well.  Further, as outlined above, there is no reason to believe that an officer providing information to a reviewing agency would be less likely to provide truthful responses if he or she were aware that certain information might be reviewed by a federal court or by plaintiffs' counsel.   Finally, there is no indication that plaintiffs' lawsuit is frivolous, and the information sought in the after action reports is important to providing plaintiffs' an opportunity to prove their case.

For the foregoing reasons, the court finds that the after action reports are not privileged.  Accordingly, the after action reports shall be produced subject to the protective order and an "ATTORNEYS' EYES ONLY" designation.  The sections of the after action reports addressing tactical information may be redacted but shall be submitted to the court for *in camera* review, as outlined above.

### 4. Independent Police Review Materials

Defendants assert that various documents authored by the Independent Police Review (IPR) Division of the City Auditor's Office are privileged from discovery.  Defendants may redact the names of non-defendant officers mentioned in IPR documents, and personal information of complainants contained in the documents.  The remainder of the relevant, responsive IPR documents

shall be produced.  These documents are subject to the protective order and shall be marked "ATTORNEYS' EYES ONLY."  After disclosure, if plaintiffs seek to discover the identity of any complainant, plaintiffs may move to discover that information, and the court will evaluate the privacy concerns of any such complainant.

### 5. Internal Affairs Division Records

Defendants seek to protect files of the Internal Affairs Division (IAD) of the Portland Police Bureau.  Defendants contend that all on-going investigations are privileged and should not be discoverable.  The court concurs that effective review could be severely hampered if on-going investigations were subject to discovery.  Accordingly, defendants need not produce IAD files from on-going investigations.  However, defendants are ordered to produce to plaintiffs a log of open IAD files involving any defendant officer and a description of the charge filed against the officer.  Following this disclosure, if plaintiffs seek to discover additional information, they shall so move.

Defendants agree to disclose the IAD summation sheets communicating the IAD history of each defendant.  This disclosure is subject to the protective order and shall be marked "ATTORNEYS' EYES ONLY."  With regard to the actual IAD files, the court finds that disclosure of all relevant completed IAD files is necessary to enable plaintiffs to discover evidence for their *Monnell*-based claims.  *Monnell v. Department of Soc. Servs. of City of New York,* 436 U.S. 658, 694 (1978).  Plaintiffs allege that defendants maintain a policy and custom of inadequately training and supervising officers.  Amended Complaint ¶¶ 7.3-7.8  Plaintiffs are entitled to discover evidence of prior police misconduct involving the use of excessive force and inadequate training or

16 - OPINION and ORDER

supervision.  Accordingly defendants shall produce all relevant, responsive IAD files from incidents

occurring before or after August 22, 2002, that involve allegations of police brutality and the

defendant officers.  This disclosure is subject to the protective order and shall be marked

"ATTORNEYS' EYES ONLY."  As stated above, on-going investigations shall not be subject to

disclosure.

### 6. Attorneys' Eyes Only Designations and Redactions

If, after disclosure, plaintiffs determine that materials have been improperly redacted or that

the public interest is harmed by an "ATTORNEYS' EYES ONLY" designation, plaintiffs may move

for the production of unredacted documents or for the removal of the "ATTORNEYS' EYES

ONLY" designation.  All documents marked "ATTORNEYS' EYES ONLY" shall be accessible

only to the attorneys of record.

### 7. New Protective Order

The above discussion responds to each category of evidence identified in defendants' Motion

for Protective Order.  No other documents, other than those specifically identified above, shall be

subject to the protective order.  For example, in the course of discovery, plaintiffs have requested

photographs of the defendant officers in order to aid in the identification of officers who allegedly

used excessive force on August 22, 2002.  Defendants did not list this category of documents in their

Motion for Protective Order.  Accordingly, all relevant, responsive photographs shall be produced

outside of the protective order, absent defendants' good-cause showing of the need to produce this

information under the protective order.

If, in the course of discovery, defendants withold or redact additional documents based on the assertion of any privilege, defendants shall clearly describe the documents being withheld in a privilege log and identify the basis for the claimed privilege.

The parties shall jointly draft and submit to the court a proposed protective order within 14 days of this Order.  The language of the protective order shall comport with the various rulings made in this Order.  If the parties are unable to jointly draft a protective order, they shall file separate proposals and outline the differences between the proposals.

## C. Motion to Dismiss

Defendants move to dismiss several claims for relief.  A claim will be dismissed only if it appears beyond a doubt that plaintiffs can prove no set of facts in support of their claims that would entitle them to relief.  *See* Fed. R. Civ. P. 12(b)(6); *Steckman*, 143 F.3d at 1295-96; *Johnson v. Knowles*, 113 F.3d at 1117; *Gilligan*, 108 F.3d at 246.  The reviewing court must treat all facts alleged in the complaint as true, and all doubts are resolved in favor of the nonmoving party.  *Gilligan,* 108 F.3d at 248; *NL Indus., Inc.*, 792 at 898; *Experimental Eng'g Inc.*, 614 F.2d at 1245.

### 1. Third and Fourth Claims for Relief: Fourth Amendment Violations

Plaintiffs' third and fourth claims for relief are asserted against the individual defendants and the City of Portland respectively.  Both claims allege that defendants exercised excessive force during the August 22, 2002, altercation, thereby violating plaintiffs' Fourth Amendment rights.  The Fourth Amendment of the United States Constitution protects "[t]he right of the people to be secure in their

18 - OPINION and ORDER

persons, houses, papers, and effects, against unreasonable searches and seizures . . . ."  U.S. Const.

amend. IV.  Relying on *County of Sacramento v. Lewis*, 523 U.S. 823 (1998), defendants contend

that because the Amended Complaint fails to assert that a seizure occurred on August 22, 2002,

plaintiffs have failed to properly plead a Fourth Amendment violation.  *Id.* at 843-44.  However,

defendants misconstrue *County of Sacramento'*s definition of what constitutes a "seizure" under the

Fourth Amendment.  That case involved a high-speed chase between the police and a motorcyclist

that resulted in the motorcyclist's death.  The Supreme Court held that the motorcyclist's death did

not constitute a "seizure" under the Fourth Amendment because the collision that caused the death

was unintentional.  *Id.* at 844.  The court reaffirmed its earlier Fourth Amendment jurisprudence,

holding that a seizure occurs from the "governmental termination of freedom of movement through

means intentionally applied."  *Id.* (citing *Brower v. County of Inyo*, 489 U.S. 593, 596-97 (1987)).

The Amended Complaint alleges facts, which, if proved, would establish that defendants

intentionally restrained plaintiffs' freedom of movement.  Plaintiffs allege that defendants intentionally

applied pepper spray and shot rubber bullets at plaintiffs who were engaged in lawful protest

activities.  Further, the protesters were physically moved back from their peaceful positions,

according to the Amended Complaint.  In their supporting memorandum, defendants appear to

contend that the Fourth Amendment is not offended by the intentional use of force that physically

injures a citizen and only *reduces* his or her freedom of movement.  If the citizen is able to walk or

hobble away, according to defendants, no Fourth Amendment violation has occurred.  However, as

the Supreme Court has held, "The word 'seizure' readily bears the meaning of laying on of hands or

application of physical force to restrain movement, even when it is ultimately unsuccessful."

*California v. Hodari D.*, 499 U.S. 621, 626 (1991).

Defendants admit that on August 22, 2002, the police physically moved the protesters approximately 120 feet in order to create a larger entryway to the street.  Defendants used pepper spray and physical force to achieve this movement.  Clearly the effect of defendants' actions was to control plaintiffs' movement.   Additionally, certain plaintiffs assert that they were physically prevented from leaving an area cordoned off by the police.  By physically moving certain plaintiffs and circumscribing the area of movement of other plaintiffs, defendants seized plaintiffs within the meaning of the Fourth Amendment.  Construing the facts pleaded in the Amended Complaint as true, as this court must do at this stage in the litigation, plaintiffs have properly asserted claims for Fourth Amendment violations.  Accordingly, defendants' Motions to Dismiss the third and fourth causes of action of the Amended Complaint are denied.

## 2. Plaintiffs' Prayer for Injunctive Relief

Defendants move to strike plaintiffs' prayer for injunctive relief.  Plaintiffs seek an order directing the City of Portland to install and execute a civilian police review board.  Defendants contend that plaintiffs lack standing to obtain this injunction.

This court may entertain only justiciable questions that involve an actual "case or controversy."  U.S. Const. art. III, § 2, cl. 1; *Seven Words LLC v. Network Solutions*, 260 F.3d 1089, 1095 (9th Cir. 2001).  A plaintiff must have standing in order to bring a justiciable case or controversy before the court.  Standing exists if plaintiffs can prove the existence of an injury in fact,

caused by the government, that can be redressed by a decision in the plaintiffs' favor.  *United States v. City of Tacoma, Wash.*, 332 F.3d 574, 578 (9th Cir. 2003) (citing *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560-61 (1992)).

Plaintiffs claim that they likely will be victimized by defendants' practice of assaulting peaceful protesters and that this likelihood constitutes an injury in fact.  In *City of Los Angeles v. Lyons*, 461 U.S. 95, 97-98 (1983), a plaintiff sought to enjoin the Los Angeles Police Department from using choke holds as a means of subduing suspects.  The Supreme Court held that the plaintiff lacked standing to assert this claim because he failed to show that he would likely be injured by the choke hold policy.  *Id.* at 108-09.  Because the plaintiff "made no showing that he is realistically threatened by a repetition of his experience," he lacked standing to sue for the injunctive relief.  *Id.* at 109.

In contrast to *Lyons*, plaintiffs in this case specifically allege that it is the policy of the Portland Police Bureau to use excessive force against peaceful protesters.  Notwithstanding defendants' stated policy to apply pepper spray only to unlawful protesters, plaintiffs allege that defendants in fact apply pepper spray and shoot rubber bullets at citizens who are lawfully exercising their First Amendment rights.

Defendants contend that because thousands of people engage in protest activities in Portland each year without encountering police force, plaintiffs cannot establish that they will definitely be harmed by the police at a future protest event.  For example, defendants correctly note that certain plaintiffs assert that prior to August 22, 2002, they had attended protests in Portland without being assaulted by the police.  Amended Complaint ¶ 6.3.  Defendants contend that this admission

21 - OPINION and ORDER

demonstrates the speculative nature of any future injury. However, plaintiffs need not show that they will definitely be harmed by defendants. Rather, plaintiffs' burden is to show a likelihood of future harm. *See Lyons*, 461 U.S. at 105, (finding that the plaintiff "was [not] *likely* to suffer future injury") (emphasis added). There must be a "real or immediate threat that the plaintiff will be wronged again." *Lyons*, 461 U.S. at 111.

The Amended Complaint alleges a sufficient likelihood of future harm. Plaintiffs contend that defendants are engaged in a pattern and practice of using excessive force against lawful protesters. Amended Complaint ¶ 7.1-7.10. Thus, while the plaintiff in *Lyons* was unable to show that he would likely be arrested in the future and victimized by a choke hold, plaintiffs in this case are likely to lawfully protest in the future, thus subjecting them to defendants' alleged policy and practice of harming lawful protesters.

The constitutional deprivation and physical injury associated with defendants' alleged policy is specific and particularized. However, despite the particularized nature of the injury, standing is lacking because plaintiffs fail to establish that the installation of a citizen review board would likely redress their injuries. *Lujan*, 504 U.S. at 561-62. Plaintiffs bear the burden of establishing that the alleged injury is fairly traceable to the challenged governmental conduct. *Allen v. Wright*, 468 U.S. 737, 751 (1984). In this case, the alleged injury is the deprivation of plaintiffs' constitutional right to speak freely at public events without being physically harmed by defendants. The remedy sought to address this injury is the implementation of a citizen review board. The causative link between the

injury suffered and the remedy sought is too attenuated to constitute a cognizable case and controversy.

Plaintiffs allege that the review board would deter "future acts of violence against peaceful civilians." Amended Complaint ¶ 1.4. Although the implementation of a citizen review board *might* prevent future acts of police misconduct, plaintiffs' carry a heavier burden. In order for plaintiffs to have standing to assert this claim, they would have to establish not only that they would likely be attacked by the police in the future but that a police officer planning to use unlawful force would likely consider the presence of a citizen review board and refrain from exercising excessive force because of the presence of the board. Like the chain of reasoning in *Allen v. Wrights*, 468 U.S. at 758-59, which was dependent on the decision of several intermediaries, the attenuated causal connection here requires strict conduct from board members and police officers that is speculative at best. Likewise, the remedy presumes the "independent action of some third party not before the court," namely the enforcement decisions of members of the citizen review board. *Id.* at 758 (citing *Simon v. Eastern Kentucky Welfare Rights Org.*, 426 U.S. 26, 42 (1976)). Given the speculative nature of the remedy, plaintiffs fail to establish that the implementation of a citizen review board will likely redress their alleged constitutional deprivations. Because plaintiffs lack standing to obtain the relief sought, plaintiffs' prayer for an order enjoining defendants to install and implement a citizen review board is dismissed.

### 3. Defendants' Motion to Dismiss Claims of Minor "SJ"

One of the plaintiffs is "SJ," a 6-year-old girl who attended the protest with her parents. The Amended Complaint alleges that although the police did not apply pepper spray to SJ, the girl witnessed her father and younger brother being sprayed. SJ allegedly suffered emotional distress from witnessing the event. Defendants move to dismiss all of SJ's claims.

### a. Third and Fourth Claims: Fourth Amendment Violations

The third and fourth claims for relief assert that the individual defendants and the City of Portland respectively violated SJ's Fourth Amendment rights. Defendants argue that because SJ concedes she was never physically harmed by the pepper spray, her claims are vicarious to her parents and are therefore not cognizable under the Fourth Amendment. Defendants further argue that because plaintiffs concede that SJ was never physically attacked, the claim for "excessive force" fails.

"[T]he 'essential inquiry is whether [the plaintiff] reasonably believed that he or she was not free to leave.'" *Morgan v. Woessner,* 997 F.2d 1244, 1253 (9th Cir. 1993) (citing *United States v. Patino,* 649 F.2d 724, 726-27 (9th Cir.1981)). The Amended Complaint alleges that the defendant officers surrounded SJ and her family and did not allow them to exit the scene of the protest despite repeated requests from SJ's father to do so. A reasonable person in SJ's position would have believed she was not free to leave. Although SJ was never physically attacked, the Fourth Amendment protects citizens from unlawful seizures, which are to be evaluated under the traditional reasonableness standard. Based on the facts alleged in the Amended Complaint, SJ was seized within the meaning of the Fourth Amendment. Accordingly, her claims for Fourth Amendment

violations are cognizable and cannot be dismissed.  Defendants' Motions to Dismiss SJ's third and

fourth claims for relief are denied.

### b. Fifth Claim: Assault and Battery

According to the common law of Oregon, a battery requires an intentional harmful or

offensive contact with another.  *Cook v. Kinzua Pine Mills Co.*, 293 P.2d 717, 723 (Or. 1956).

Plaintiffs concede that the defendant officers made no contact with SJ.  Because plaintiffs have failed

to plead a *prima facie* case for the tort of battery, it is dismissed.

An assault is a volitional act made with the intent to cause harmful contact to another with the

ability to carry that intent into effect.  *Id.* (citing *State v. Olsen*, 7 P.2d 792 (Or. 1932)).  The

Amended Complaint alleges that the defendant officers "attempted to do violence to plaintiffs and had

the present ability to carry that intention into effect."  Amended Complaint ¶ 12.2.  The Amended

Complaint alleges, "This conduct in fact caused injury to all of the plaintiffs and further caused them

great fear."  Amended Complaint ¶ 12.5.  SJ's claim for assault survives because plaintiffs allege that

the officers attempted to cause harm to plaintiffs and that the officers' actions did in fact place

plaintiffs in reasonable apprehension of the harmful contact.  This is sufficient to make out a *prima*

*facie* case for SJ's claim for assault.  Accordingly, defendants' Motions to Dismiss SJ's claim for

assault are denied.

### c. Sixth Claim: Negligence

Defendants correctly note that a child has no cause of action for the loss of parental

consortium.  *Northwest v. Presbyterian Intercommunity Hosp.*, 652 P.2d 318 (Or. 1982).

Nevertheless, plaintiffs argue that SJ was harmed directly by the defendant officers "by virtue of being terrorized while everyone around her, including her parents and siblings, were debilitated and screaming in pain."  Plaintiffs' Response to Portland Defendants' Rule 12 Motions at 29. Accordingly, plaintiffs contend that SJ has been injured because she was "traumatized" and "frightened" by the event.  In general, "Oregon courts do not permit the recovery of damages for negligently inflicted emotional distress in the absence of evidence of some related physical injury." *Simons v. Beard*, 72 P.3d 96, 100 (Or. App. 2003) (citing *Hammond v. Central Lane Communications Cent.*, 816 P.2d 593 (Or. 1991)).  The Amended Complaint fails to allege that defendants' actions had any physical impact on SJ.  Because SJ was not physically affected by the events of August 22, 2002, and because she cannot recover for the loss of parental consortium, SJ's negligence claim fails as a matter of law.  Accordingly, defendants' Motions to Dismiss SJ's sixth claim for relief are granted.

### d. Seventh Claim: Intentional Infliction of Emotional Distress

The tort for intentional infliction of emotional distress is properly pleaded if a plaintiff alleges: "(1) the defendant intended to inflict severe emotional distress on the plaintiff, (2) the defendant's acts were the cause of the plaintiff's severe emotional distress, and (3) the defendant's acts constituted an extraordinary transgression of the bounds of socially tolerable conduct." *Williams v. Tri-County Metro. Transp. Dist. of Oregon*, 958 P.2d 202 (Or. App. 1998) (citing *McGanty v. Staudenraus*, 901 P.2d 841 (Or. 1995)). The Amended Complaint alleges that defendants engaged in extreme and outrageous conduct with the intent to cause SJ and the other plaintiffs extreme emotional distress. Amended Complaint ¶ 14.3-14.6. Further, plaintiffs allege that defendants' conduct did in fact cause plaintiffs extreme emotional distress. Amended Complaint ¶ 14.2. These allegations constitute a *prima facie* case for the tort of intentional infliction of emotional distress in Oregon. Accordingly, defendants' Motions to Dismiss SJ's seventh claim for relief are denied.

## D. Defendants' Remaining Rule 12 Motions

Defendants' Motions to Strike certain paragraphs of the Amended Complaint (Docs. #25, 27) are denied. Fed. R. Civ. P. 12(f). Defendants' Motions for More Definite Statement on plaintiffs' prayer for special damages (Docs. #25, 27) are granted. Fed. R. Civ. P. 12(e). Plaintiffs must specifically state their items of special damages. Fed. R. Civ. P. 9(g). Plaintiffs shall file their Second Amended Complaint within 21 days of this Order.

## E. Defendants' Motion to Bifurcate Trial and Discovery

Defendants move to bifurcate plaintiffs' claims for trial and discovery.  Defendants seek to try plaintiffs' claims for the use of excessive force first.  If plaintiffs successfully prove the existence of a constitutional deprivation in the initial trial, defendants would then have the court consider the municipal defendants' alleged failure to properly train and supervise the defendant officers.  *Monnell,* 436 U.S. at 694.

A court may bifurcate claims at its discretion "in the furtherance of convenience . . . or when Federal trials will be conducive to expedition and economy . . . . "  Fed. R. Civ. P. 42(b).  Based on a review of the record, the court determines that the interests of judicial economy will best be served by trying all of plaintiffs' claims together, rather than engaging in the protracted, piecemeal process proposed by defendants.  Accordingly, defendants' Motions to Bifurcate are denied.

## CONCLUSION

For the foregoing reasons, plaintiffs' Motions to Compel (Docs. #37, 88) are denied with leave to renew; defendants' Motion to Limit Discovery and for  Protective Order (Doc. #57) is granted in part and denied in part; defendants' Rule 12 Motions (Docs. #25, 27) are granted in part and denied in part; and (4) defendants' Motions to Bifurcate (Docs. #80, 84) are denied.

/ / /

/ / /

/ / /

/ / /

/ / /

The parties shall jointly draft and submit to the court a proposed protective order within 14 days of this Order.  Plaintiffs shall file an amended complaint within 21 days of this Order. Defendants shall submit the unredacted version of the after action reports concerning tactical information identified in paragraph 3 of the Benson Affidavit for *in camera* inspection within 21 days of this Order.

IT IS SO ORDERED.

DATED this   8   day of September, 2003.

      /s/Ancer L.Haggerty

Ancer L. Haggerty
United States District Judge